# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

BOBBY JOE CAMPBELL                                             PLAINTIFF

v.                                             CIVIL ACTION NO. 1:16-cv-141-JCG

MARSHALL FISHER,
RONALD WOODALL, and KAREN DEESE              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

BEFORE THE COURT are two motions for summary judgment: the Motion for Summary Judgment (ECF No. 30) filed by Defendants Ronald Woodall and Karen Deese, and the Motion for Summary Judgment Based on Sovereign and Qualified Immunity (ECF No. 35) filed by Defendant Marshall Fisher. Plaintiff filed respective responses in opposition to each Motion (ECF No. 40); (ECF No. 41). Having considered the submissions of the parties, the record as a whole, and relevant law, the undersigned concludes that the Motion for Summary Judgment (ECF No. 30), filed by Ronald Woodall and Karen Deese, and the Motion for Summary Judgment Based on Sovereign and Qualified Immunity (ECF No. 35), filed by Marshall Fisher, will both be GRANTED.

## I. BACKGROUND

A. <u>Procedural History</u>

Plaintiff Bobby Joe Campbell is a prisoner in the custody of the Mississippi Department of Corrections ("MDOC") housed at South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi. He filed his Complaint (ECF No. 1) on April 27, 2016, brought pursuant to 42 U.S.C. § 1983, alleging that Defendants

violated his Eighth Amendment right to be free from cruel and unusual punishment. Although his Complaint requested an award of damages, (ECF No. 1, at 4), he later clarified that he seeks only injunctive relief in the form of Court-ordered medical care, (ECF No. 30-2, at 35-36). Plaintiff proceeds *pro se* and *in forma pauperis*.

On May 16, 2016, the undersigned issued an Order (ECF No. 6) directing Plaintiff to provide additional information about how Defendants supposedly violated his constitutional rights. Plaintiff filed a response (ECF No. 7) to that Order on June 2, 2016. On December 14, 2016, the Court held an omnibus hearing,[1] during which Plaintiff supplemented the allegations in his Complaint and the Court set case management deadlines. *See* Minute Entry Dec. 14, 2016; Transcript of Omnibus Hearing (ECF No. 30-2). Defendants thereafter filed the instant motions for summary judgment on April 21, 2017 (ECF No. 30) and April 28, 2017 (ECF No. 35), respectively.

B. <u>Plaintiff's Allegations</u>

Plaintiff alleges that in October or November 2014, he suffered a chemical burn to both of his legs while assisting another inmate pour cleaning chemicals out of a large drum and into a smaller container. Plaintiff was on kitchen duty and went to the laundry room to get chemicals for cleaning table surfaces and the floor. He says the chemicals splashed up on to his legs, ate through his pants, and burned both of his legs below his knees. He immediately went to the infirmary, where he

---

[1] The omnibus hearing functioned as a screening hearing pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

was seen by either Defendant Karen Deese, a nurse practitioner, or Defendant Ronald Woodall, a doctor.

In a written filing, Plaintiff explains that he "was initially treated by Defendant R. Woodall," (ECF No. 7, at 5), but he testified at the omnibus hearing that he saw NP Deese when he first went to the infirmary, *see* (ECF No. 30-2, at 17-18). Furthermore, he testified that Dr. Woodall never saw his legs and never spoke to him about his condition of his legs; Dr. Woodall only responded to his administrative grievance. *See* (ECF No. 30-2, at 23). Either Dr. Woodall or NP Deese cleaned the burns, applied a burn cream, and wrapped his legs. Woodall or Deese also ordered him an ointment and told him to come back to the infirmary every three days to have the wrapping changed. Plaintiff thereafter returned to his work in the kitchen and dining hall.

Plaintiff says that he went to the infirmary every three days as instructed, and that NP Deese cleaned his burns and re-wrapped his legs each time. He says he used the ointment as instructed but that this treatment – his use of the ointment and regular dressing changes – did not heal his legs. Pain regularly persists and he has scabs on his legs. Plaintiff believes that he should have been referred to a burn specialist because he has diabetes: he fears that the combination of the burn and his status as a diabetic (presumably in reference to complications from diabetes that affect his limbs) may lead to the loss of his legs. However, no medical professional warned him of such a risk.

Plaintiff maintains that the prescribed ointment has not done anything to help his legs heal, but he noted that he also applies cocoa butter and baby oil to his legs in order to "keep [them] moist." (ECF No. 30-2, at 29). No medical professional told him to use cocoa butter or baby oil. Plaintiff does not propose an alternative treatment that he should have received, but believes that something else could have and should be done for his legs.

When asked why he is suing each Defendant, Plaintiff explained that he is suing Marshall Fisher because he is the final policymaker at MDOC and responsible for the overall safety and well-being of inmates housed in MDOC facilities. It is worth noting that Plaintiff could not remember why he was suing Marshall Fisher when questioned at the omnibus hearing. *See* (ECF No. 30-2, at 23-24). Plaintiff stated that he is suing doctor Ronald Woodall because Woodall (1) did not refer Plaintiff to a burn specialist, (2) continued to prescribe the same ointment despite Plaintiff's protests that it was ineffective, and (3) is in charge of care provided at the clinic. Finally, Plaintiff is suing NP Karen Deese because she refused to refer him to see a burn specialist even though he expressed fears of losing his legs. *See* (ECF No. 1); (ECF No. 7); (ECF No. 30-2).

## II. DISCUSSION

A. Legal Standards

   a. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any

4

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

    b. <u>The Prison Litigation Reform Act</u>

Because Plaintiff is a prisoner pursuing a civil action seeking redress from government employees, the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321, H.R. 3019 (codified as amended in scattered titles and sections of the U.S.C.), applies and requires that this case be screened.

The PLRA provides that "the Court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see* 28 U.S.C. § 1915(e)(2)(B). Thus, the statute "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

B. <u>Analysis</u>

The Motion for Summary Judgment (ECF No. 30) filed by Defendants Woodall and Deese argues that Woodall and Deese are entitled to qualified immunity against Plaintiff's claims because undisputed record evidence demonstrates that Plaintiff has received necessary and appropriate medical care; no constitutional violation has occurred. (ECF No. 31, at 4-5). Plaintiff responds that summary judgment is inappropriate because material issues of fact remain as to whether Defendants should have referred him to see a burn specialist. (ECF No. 40, at 2-5). Moreover, says Plaintiff, he has alleged cognizable claims for deliberate indifference because Defendants Deese and Woodall "(1) knew that Plaintiff was a diabetic and that the unhealing burn injuries could result in loss of limbs (legs) or life; and (2) Defendants failed to respond reasonably to Plaintiff's serious medical needs." *Id.* at 6.

6

Defendant Fisher's Motion for Summary Judgment (ECF No. 35) argues that Fisher is entitled to sovereign immunity, insofar as Plaintiff seeks monetary damages against him in his official capacities, and that he is otherwise entitled to qualified immunity against Plaintiff's claims because Plaintiff has failed to state a claim against him. (ECF No. 36, at 5-10). Fisher submits that Plaintiff has not alleged Fisher personally took action or implemented a policy to affect Plaintiff's circumstances, and Fisher cannot be held liable under a theory of supervisory liability. *Id.* at 7-8). Plaintiff responds that Fisher, as Commissioner of MDOC, is "responsible for the overall safety and general well-being of Plaintiff, and ensuring that MDOC policies are followed by MDOC staff members, employees, and agents," yet Fisher has not provided a reason for why Plaintiff was denied his request to be examined by a burn specialist. (ECF No. 41, at 3-6).

Plaintiff disputes whether Defendants' actions amount to deliberate indifference towards a substantial risk of serious harm, but he does not dispute that he received the care documented in his medical records (ECF No. 34). The material facts are therefore not at issue, and the record is ripe for summary judgment. Defendants raise the affirmative defenses of sovereign immunity and qualified immunity. However, the Court need not address Fisher's arguments concerning sovereign immunity because Plaintiff clarified that he seeks only injunctive relief. Accordingly, the Court proceeds to the issue of qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Accordingly, a government official is entitled to immunity from suit unless (1) Plaintiff has made allegations sufficient to show a violation of a constitutional right, and (2) the right at issue was "clearly established" at the time of the official's alleged misconduct. *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). When a government official raises the defense of qualified immunity to a Section 1983 claim, the plaintiff must provide "allegations of fact focusing specifically on the conduct of the individual who caused the plaintiff's injury." *Reyes v. Sazan,* 168 F.3d 158, 161 (5th Cir. 1999). Defendants can only be held liable for their own actions or inactions under 42 U.S.C. § 1983; liability may not be found by way of a respondeat superior theory. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 468 (5th Cir. 2010).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[2] *Helling v. McKinney,* 509 U.S. 25, 31 (1993). The Eighth Amendment's protection against cruel and unusual punishment prohibits deprivations that are not specifically a part of a prison sentence, but are "suffered during imprisonment." *Wilson v. Seiter,* 501 U.S. 294, 297 (1991) (citing *Estelle v. Gamble,* 429 U.S. 97 (1976)). This protection requires prison officials to "provide

---

[2] The Eighth Amendment is made applicable to the State of Mississippi and its agencies by virtue of the Due Process Clause of the Fourteenth Amendment. *Wilson v. Seiter,* 501 U.S. 294, 296-97 (1991).

8

humane conditions of confinement," which includes ensuring that inmates receive adequate medical care. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994).

Determining the viability of a claim over conditions of confinement requires an inquiry into the defendant prison official's state of mind. *Wilson*, 501 U.S. at 302. Only where the prison official exhibits "deliberate indifference" towards a "substantial risk of serious harm" will an Eight Amendment violation be found. *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). Thus, a prisoner must prove (1) an "objective exposure to a substantial risk of serious harm," (2) the prison official's knowledge of that risk, and (3) the prison official's disregard for that risk. *Id.*

The Fifth Circuit has elaborated upon the deliberate indifference standard in the context of medical care:

> Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. A showing of deliberate indifference requires the prisoner to submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

*Id.* at 346 (citations and internal quotation marks omitted). "Deliberate indifference is an extremely high standard to meet." *Id.* (citing *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).

Having considered Plaintiff's allegations and the undisputed record, the Courts concludes that Plaintiff has failed to demonstrate that his constitutional rights were violated. Regardless of whether Plaintiff has asserted his exposure to a substantial risk of serious harm and Defendants' knowledge of that risk, Plaintiff's allegations fail to establish any individual defendant's deliberate indifference towards Plaintiff's medical needs.

As an initial matter, Plaintiff has failed to state a claim against Defendant Fisher. "Well settled Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Monell v. Department of Social Services,* 436 U.S. 658, 691-95 (1978)). "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury." *Id.* (citing *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir. 1987)). Plaintiff's allegations against Fisher state only a claim for vicarious liability. He describes no actions taken by Fisher.

Moreover, his assertion that Fisher failed to ensure that Dr. Woodall and NP Deese referred him to a burn specialist must fail because Fisher – the Commissioner of MDOC – is not a medical professional. Fisher has "no authority or responsibility to evaluate patients or order any type of medical treatment." *Hunt v. Barry Telford Unit, TDCJ*, No. 5:15CV152, 2017 WL 1100721, at *5 (E.D. Tex. Mar. 24, 2017). "[P]rison officials who are not medical professionals are entitled to rely on

10

the [medical] opinions of medical professionals." *Id.* (citations omitted); *see also Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008) ("Significantly, in determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals."); *Estes v. Rahorst*, No. 2:11-CV-0023, 2013 WL 5422874, at *6 (N.D. Tex. Sept. 27, 2013) ("Defendant Wallace, a clinic administrator, was entitled to rely upon the judgment of plaintiff's treating physicians and other medical professionals."). Even if Fisher had known about the specialist referral Plaintiff sought, Fisher is not responsible for the treatment decisions made by Dr. Woodall and NP Deese. Fisher is therefore entitled to qualified immunity against Plaintiff's claims.

The Court turns next to the alleged deliberate indifference of Dr. Woodall and NP Deese. Plaintiff's medical records show that Plaintiff went to the infirmary on October 10, 2014 for a chemical burn suffered the previous day while "helping out in the laundry." (ECF No. 34, at 332). He was seen by a nurse practitioner, Gwendolyn Woodland, who noted that Plaintiff presented with a first-degree burn to his left lateral shin but denied any pain in his left leg. Woodland provided wound care, scheduled future wound care, prescribed a cream for Plaintiff to apply to the burn, and scheduled a follow up visit for two-weeks' time. *See Id.* at 332-34. He was seen on October 12, 2014 and October 14, 2014 for wound care by two non-party nurses. *Id.* at 335-36. Plaintiff did not show up for scheduled wound care on October 18, 2014. *Id.* at 337. NP Deese then saw him on October 24, 2014 for the follow up visit and noted that his abrasions were healing and no longer draining. *Id.*

11

On November 10, 2014, Plaintiff was seen by NP Woodland in order to follow up on Plaintiff's abnormal lab results. *Id.* at 343-45. Woodland noted that Plaintiff had a history of diabetes mellitus dating back to 2006 but was not consistently taking his related medication. *Id.* at 344. Woodland cautioned Plaintiff about the complications of uncontrolled diabetes and instructed Plaintiff to take all of his medications as prescribed. *Id.*

Woodland saw Plaintiff again on December 22, 2014 for chronic care. *Id.* at 349. Woodland diagnosed Plaintiff with having peripheral vascular disease, which she described as a condition "where there is a block in a main artery to the lower extremities impeding the blood flow to the feet and legs causing pain in the back of the legs called claudication." *Id.* at 351. Woodland also noted that records indicated Plaintiff had twice failed to show up for pill call to receive his diabetes medications, but Plaintiff disputed the accuracy of those records. *Id.* at 352. Plaintiff was again warned of the complications that result from uncontrolled diabetes. *Id.*

On March 30, 2015, Plaintiff met with NP Deese to discuss his lab results. *Id.* at 381. Deese assessed Plaintiff's control of his diabetes to be "poor" and noted that Plaintiff was "not compliant" with his morning accuchecks (to measure his glucose levels) and insulin use. *Id.* at 384. Deese also documented that Plaintiff presented with "whitish colored maceration" between his third and fourth toes on his right foot; there was no drainage or erythema. *Id.* She prescribed Plaintiff Tolnaftate, an antifungal cream, and scheduled a chronic care follow up for one month's time. *Id.*

at 388. However, Plaintiff was unable to show for his follow-up because of an institutional lockdown. *Id.* at 398.

At Plaintiff's chronic care visit on June 22, 2015, NP Deese noted that Plaintiff's right lower leg had "areas of thickened, scaly, crusted skin," which was the "healed burn site." *Id.* at 412. Deese again noted Plaintiff's noncompliance with his diabetes medications and discussed the long term consequences of uncontrolled diabetes with Plaintiff. *Id.* Deese prescribed A+D skin ointment for Plaintiff to apply twice daily. *Id.* at 415.

On August 7, 2015, Plaintiff went to sick call with complaints of pain and drainage from his former burn site. *Id.* at 426-27. He was seen by NP Deese who observed "[t]hickened, cracked, scaly skin" with a "[l]inear cracked area" of approximately 0.5cm in length on his right lower leg. *Id.* at 427. Deese saw a small amount of crusted drainage, no active drainage, and noted that the skin was slightly warmer to the touch. *Id.* She prescribed Bactrim tablets, Lubrisoft lotion, and Silvadene cream and ordered a schedule of wound care. *Id.* at 427-29.

Plaintiff had the dressing on his leg changed on August 9, 2015. *Id.* at 430. The nurse noted dead skin but no drainage. *Id.* When his dressing was again changed on August 11, 2015, no edema or drainage was noted and his skin was intact and without odor. *Id.* at 431. No open wound was noted when his dressing was changed on August 14, 2015 and August 19, 2015. *Id.* at 432-33. No skin conditions were noted in Plaintiff's September 14, 2015 chronic care visit with NP Deese. *Id.* at 445. When he was again counseled about his noncompliance with

13

maintenance of his diabetes and of the long term effects of uncontrolled diabetes, NP Deese noted that Plaintiff appeared "apathetic." *Id.* at 447.

On September 18, 2015, Plaintiff went to sick call with complaints related to having suffered a chemical burn seven months prior. NP Woodland noted that Plaintiff did not appear to be in distress and that both of his legs had healed lesions – the skin was intact but was very dry and scaly. *Id.* at 449. Woodland prescribed the same topical A+D ointment. *Id.* at 450. He again went to sick call on October 13, 2015, complaining of pain and swelling in his legs and feet, and dry skin on his legs. *Id.* at 460. He reported that the prescribed ointment was not relieving his dry skin. *Id.* NP Deese prescribed Lubrisoft lotion and directed Plaintiff to elevate his legs when possible and follow up at sick call as needed. *Id.* at 462. Deese also ordered Plaintiff knee-high compression stockings for his leg swelling. *Id.* at 463.

On November 3, 2015, NP Deese saw Plaintiff for a chronic care visit. *Id.* at 470. She noted a few areas of "whitish colored maceration between toes of bilateral feet" and continued poor management of his diabetes – he had "improved with compliance slightly." *Id.* at 472-74. His next chronic care visit was December 9, 2015, wherein NP Deese noted that the skin on his lower legs was "grossly thickened and scaly with what appears to be scant areas of crusted drainage." *Id.* at 492-93.

On December 16, 2015, he was called multiple times by nurses for an Unna Boot, which is a compression dressing with zinc oxide, but failed to show. *Id.* at 497.

His legs were wrapped with Unna Boots on December 17, 2015, and again on December 22, 2015. *Id.* at 498-99.

During Plaintiff's chronic care visit on April 12, 2016, NP Deese noted "scattered whitish colored areas between some toes" and "thickened, scaly skin" on his lower legs, but "no areas of excoriation." *Id.* at 540-41. He was still noted to be noncompliant with his diet, regular glucose-level checks, and insulin use. *Id.* at 543. Deese prescribed Tolnafate cream and A+D ointment. *Id.* at 544. On June 14, 2016, NP Deese noted neuropathy as a complication of Plaintiff's diabetes, which he continued to manage poorly. *Id.* at 573. Deese again prescribed Lubrisoft lotion and A+D ointment for his lower legs, which she observed to have no open areas of drainage. *Id.* at 573, 576.

Plaintiff's undisputed medical records reflect that he has received considerable and regular care for his leg condition. He similarly testified to the fact that he received regular care, but he argues that this care was – and is – inadequate. However, Plaintiff's desire to be seen by an outside burn specialist does not render inconsequential the medical care that he did receive for his skin condition. Plaintiff's records demonstrate that the initial wound caused by the burn healed over the course of several weeks. NP Deese has submitted a sworn affidavit in which she opines that (1) "Mr. Campbell is a diabetic who suffers from venous insufficiency," (2) "most, if not all, of his skin problems were related to his venous insufficiency," (3) "he does not need to see an outside specialist," (4) "he was non-compliant with his diabetic medication and with his treatment for skin problems,"

15

and (5) "[w]hen he is compliant with his medications his skin problems will resolve." (ECF No. 30-3, at 1-2). NP Deese's conclusions appear to be supported by Plaintiff's medical records, but, regardless, the Court is not in a position to second-guess the medical judgment of a trained physician. *Domino*, 239 F.3d at 756 (citing *Estelle*, 429 U.S. at 107). Moreover, "Plaintiff has no constitutional right to the best medical treatment available." *Irby v. Cole*, No. 403CV141WHBJCS, 2006 WL 2827551 (S.D. Miss. Sept. 25, 2006) (citing *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978)). On this factual record, and against this legal backdrop, the Court must conclude that NP Deese and Dr. Woodall's failure to arrange for Plaintiff to see a burn specialist does not constitute deliberate indifference to Plaintiff's medical needs.

The medical records also demonstrate that Plaintiff was never seen by Dr. Woodall with regard to his skin complaints. Dr. Woodall submitted a sworn affidavit attesting to the same. *See* (ECF No. 30-4, at 1) ("[I] have never seen Mr. Campbell for his skin complaints or any other complaint related to this litigation."). Accordingly, Plaintiff's claims against Dr. Woodall must also fail because he did not directly provide care for Plaintiff and cannot be vicariously liable under § 1983.

Because Plaintiff has failed to state a claim against Marshall Fisher, and because the record demonstrates that neither Karen Deese nor Ronald Woodall were deliberately indifferent to Plaintiff's medical needs, Defendants Fisher, Deese, and Woodall are each entitled to qualified immunity against Plaintiff's claims.

## III. CONCLUSION

Based on the foregoing, the Court concludes that the Motion for Summary Judgment (ECF No. 30), filed by Ronald Woodall and Karen Deese, and the Motion for Summary Judgment Based on Sovereign and Qualified Immunity (ECF No. 35), filed by Marshall Fisher, should both be GRANTED.

Accordingly, **IT IS HEREBY ORDERED** that the Motion for Summary Judgment (ECF No. 30), filed by Ronald Woodall and Karen Deese, and the Motion for Summary Judgment Based on Sovereign and Qualified Immunity (ECF No. 35), filed by Marshall Fisher, are both **GRANTED** and Plaintiff's claims are dismissed with prejudice.

**SO ORDERED AND ADJUDGED,** this the 9th day of March, 2018.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE